# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DYSON, INC., | ) | |
| | ) | Case No. 10-cv-08126 |
| Plaintiff, | ) | |
| | ) | Judge Samuel Der-Yeghiayan |
| v. | ) | |
| | ) | Magistrate Judge Maria Valdez |
| BISSELL HOMECARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF DYSON, INC.'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff Dyson, Inc. ("Dyson") hereby requests, by and through its undersigned counsel, that Defendant Bissell Homecare, Inc. ("Bissell") answer the following interrogatories under oath within thirty (30) days from the date of service, subject to the definitions and instructions set forth herein.

### INTERROGATORIES

**INTERROGATORY NO. 1:**

State Bissell's complete factual and legal bases for each of its affirmative defenses against Dyson found in Bissell's Answer to Dyson's Complaint, filed February 3, 2011, including the identification of any documents and/or witnesses that support or refute Bissell's affirmative defenses.

**INTERROGATORY NO. 2:**

Describe with particularity Bissell's substantiation for the following advertising claims, including the identification of any documents that support or refute each of the following claims:

- Bissell's Healthy Home vacuum's HEPA filter "traps and seals in 100% of dust mites, pollen, ragweed, mold spores and 99.99% of pet dander." (Complaint at ¶ 54).

- Bissell's Healthy Home vacuum's HEPA Filter "trap[s] 100 percent of allergens like dust mites, ragweed, pollen and pet dander and prevent[s] them from escaping back into the room via the exhaust air . . . ." (Complaint at ¶ 54).

- Bissell's "Healthy Home Vacuum's filter captures 100% of slightly larger particles [larger than 0.3 microns] like pollen, ragweed, dust mites and mold spores." (Complaint at ¶ 55).

- Bissell's Healthy Home vacuum "will aid in removing 99.97% of dust mites, pollens, and ragweed particles from your home." (Complaint at ¶ 44).

- Bissell's Momentum upright vacuum's HEPA media filter "captures over 99.97% of dust mites, pollens, and ragweed." (Complaint at ¶¶ 48, 49).

- Bissell's Lift-Off MultiCyclonic Pet vacuum's filter "captures over 99.9% of pet dander." (Complaint at ¶ 48).

- Bissell's Pet Hair Eraser upright vacuum's filter "captures over 99.9% of pet dander." (Complaint at ¶ 48).

- Bissell's CleanView Helix vacuum's filter "captures over 99.9% of dust mites, pollens and ragweed." (Complaint at ¶ 48).

- Bissell's Lift-Off MultiCyclonic Pet vacuum's filter "captures over 99.9% of dust mites, pollens and ragweed." (Complaint at ¶ 48).

- Bissell's Pet Hair Eraser vacuum's filter "captures over 99.9% of dust mites, pollens and ragweed." (Complaint at ¶ 48).

- Bissell's CleanView Helix vacuum has a HEPA media filter that "captures over 99.9% of dust mites, pollen and ragweed to help you maintain a cleaner and healthier home." (Complaint at ¶ 49).

- Bissell's Pet Hair Eraser vacuum has a HEPA media filter that "captures over 99.9 percent of pet dander, dust mites, pollen and ragweed to help create a healthier home environment." (Complaint at ¶ 49).

- Bissell's Rewind SmartClean upright vacuum's HEPA filter "captures over 99.9% of dust mites, pollens and ragweeds." (Complaint at ¶ 50).

2

- Bissell's PurePro MultiCyclonic upright vacuum's HEPA filter "captures over 99.9% of dust mites, pollens and ragweeds." (Complaint at ¶ 50).

- Bissell's DigiPro Canister vacuum's HEPA filter "[c]aptures over 99.9% of dust mites, pollens and ragweed." (Complaint at ¶ 51).

- "Bissell has the HEPA Filter technology supporting many of the vacuum products including the Healthy Home Vacuum™." (Complaint at ¶ 44).

- Bissell's CleanView Helix has a "HEPA Media Filter" and/or HEPA media filtration. (Complaint at ¶¶ 48, 57).

- Bissell's Lift-Off MultiCyclonic Pet has a "HEPA Media Filter" and/or HEPA media filtration. (Complaint at ¶¶ 48, 57).

- Bissell's Pet Hair Eraser upright has a "HEPA Media Filter" and/or HEPA media filtration. (Complaint at ¶¶ 48, 57).

- Bissell's Rewind SmartClean upright has a "HEPA Media Filter" and/or "HEPA Media Filtration" (Complaint at ¶ 50).

- Bissell's PurePro MultiCyclonic upright has a "HEPA Media Filter" and/or HEPA filtration. (Complaint at ¶¶ 50, 57).

- Bissell's Momentum upright vacuum has a "HEPA Media Filter" and/or HEPA media filtration. (Complaint at ¶¶ 48, 57).

- Bissell's Lift-Off MultiCyclonic Pet vacuum has a "HEPA media post-motor filter." (Complaint at ¶ 48).

- Bissell's Pet Hair Eraser upright vacuum has a "HEPA media post-motor filter," and/or a "Style 8/14 HEPA Post-Motor Filter." (Complaint at ¶ 48).

- Bissell's Momentum upright vacuum has a "HEPA media post-motor filter" and/or a "Style 8/14 HEPA Post-Motor Filter." (Complaint at ¶ 48).

- Bissell's PurePro MultiCyclonic upright vacuum has a "HEPA media post-motor filter." (Complaint at ¶ 50).

- Bissell's Pet Hair Eraser Canister vacuum has "Dual HEPA Media Filters." (Complaint at ¶ 51).

- Bissell's DigiPro Canister has a "Washable HEPA Filter." (Complaint at ¶ 51).

3

- Bissell's Pet Hair Eraser Canister vacuum has "HEPA Media Filtration" and/or HEPA filtration. (Complaint at ¶¶ 51, 57).

- Bissell's DigiPro Canister vacuum has "HEPA Media Filtration" and/or HEPA filtration. (Complaint at ¶¶ 51, 57).

- Bissell's Pet Hair Eraser corded handheld vacuum has a "HEPA Media Filter" and/or "HEPA Media Filtration" and/or HEPA filtration. (Complaint at ¶¶ 52, 57).

- Bissell's CleanView Deluxe corded handheld vacuum has a "HEPA Media Filter" and/or "HEPA Media Filtration" and/or HEPA filtration. (Complaint at ¶¶ 52, 57).

- Bissell's Pet Hair Eraser corded handheld vacuum's "HEPA media filter ensures a healthier, thorough clean for the pet lover's home." (Complaint at ¶ 52).

- Bissell's Healthy Home vacuum has an "AireTight® HEPA System Filter" and/or "AireTight® HEPA filtration system" and/or HEPA filtration. (Complaint at ¶¶ 54, 57).

- Bissell's Healthy Home vacuum "purifies the air while you vacuum." (Complaint at ¶ 54).

- Bissell's Healthy Home vacuum's "AireTight® HEPA filtration system actually purifies the air while you are vacuuming." (Complaint at ¶ 55).

- Bissell's Healthy Home vacuum "has an AireTight® HEPA Filtration System to purify the air while you vacuum. The system traps and seals in allergens like pollens and dust mites." (Complaint at ¶ 56).

- Bissell's Healthy Home vacuum offers "[f]resh pure indoor air." (Complaint at ¶ 54).

- Bissell's claim on its Healthy Home vacuum packaging that "[t]he AireTight HEPA Filtration System means that all the air that exits the vacuum is HEPA filtered." (Complaint at ¶55).

- Bissell's claim on its Healthy Home vacuum packaging that "A HEPA filter captures 99.97% of particles as small as 0.3 microns (300 times smaller than a human hair). (Complaint at ¶ 55).

4

- Bissell's claim that "[d]uring the design and development process, BISSELL products are evaluated according to a comprehensive test process employing over 150 specific tests! This broad test approach asses each design in terms of product safety, durability, reliability, and performance, leaving no stone unturned. No product is deemed ready for production and consumer purchase until it passes stringent design requirements established by marketing and engineering that ensures total user satisfaction. Many of the product tests that BISSELL performs are based on extensive experience gleaned from over 128 years of floor care experience; experience that is unmatched by our competitors. Bissell also performs and complies with all of the industry standard tests that are recommended by UL, CSA, ASTM, ANSI, and IEC. Our test requirements typically exceed the industry standards to ensure our products are extremely safe and high performing as we strive to be our customers['] first choice for cleaning products . . . ." (Complaint at ¶ 46).

- Bissell's claim that "BISSELL's goal is to help you improve the ways you take care of your home, right down to the microscopic irritants. Since 1876, we've spent years developing cleaning tools designed to keep your living environment up to the highest standards." (Complaint at ¶ 36).

- Bissell's claim that "when we say clean . . . WE MEAN CLEAN!" (Complaint at ¶ 36).

- Bissell's claim that "[i]ncreasingly, consumers are health conscious and are aware that having a clean home means less sickness, less allergies." (Complaint at ¶ 38).

- Bissell's claim that "[a] recent survey showed that 52% of women and 49% of men would purchase a product if they felt that it would benefit the health of their family." (Complaint at ¶ 39).

- Bissell's claim that "[c]onsumers are becoming increasingly aware of how important it is to create and maintain a healthy home environment . . . ." (Complaint at ¶ 40).

- Bissell's claim that "[n]o one likes to think of their home as unclean or unhealthy, but the reality is that most homes are not as clean as they appear." (Complaint at ¶ 40).

- Bissell's claim that "[w]hen pollen, dirt, and dander find their way into the home, they take up residence in carpet and on top of hard surfaces, causing trouble for people with allergies when they get stirred up. To help people reclaim their

5

homes and their lives, BISSELL has developed a line of powerful allergen control products . . . ." (Complaint at ¶ 45).

- The following claim made by Bissell on its website with respect to a number of its vacuums:

    **Filtration:** HEPA Media

    The filter media, not the vacuum as a whole, complies with the High Efficiency Air Filter (HEPA) protocol (EN 1822-1:2009).

For each claim referenced above, Bissell's response to this interrogatory shall include, but not be limited to: a) identification and description of all test method(s) conducted relating to the claim, even if the results of a particular test were not ultimately used to substantiate the claim; b) a detailed description of the results of all such test method(s) conducted, including, for any industry standard test conducted, all data required to be reported under that standard; and c) a detailed description of the reasons why Bissell used the test method(s) identified in response to this Interrogatory.

**INTERROGATORY NO. 3:**

For each claim listed in Interrogatory No. 2 above, provide the first date of use for the claim, the date of each subsequent use of the claim, the medium or media in which each instance of the claim was made, the product/model as to which each instance of the claim was made, and the duration of each use of each claim.

**INTERROGATORY NO. 4:**

For each claim identified in Interrogatory No. 2 above, identify any changes or revisions made to the claim, the date when the change or revision was made, the medium or media in which each revised claim was made, the product/model as to which each revised claim was made, the

duration of each use of the revised claim, and describe with particularity why each identified change or revision was made.

**INTERROGATORY NO. 5:**

Identify the manufacturer and/or supplier of the HEPA filters used in each of the Bissell Vacuums, including without limitation each manufacturer and/or supplier's name, address, and contact person, as well as any information provided by the manufacturer and/or supplier to Bissell or by Bissell to the manufacturer and/or supplier regarding the performance of the HEPA filters provided to Bissell.

## DEFINITIONS AND INSTRUCTIONS

A.  "Advertisement" means any form of commercial advertisement or promotion, including but not limited to any commercial, infomercial, press release, merchandising, display, handout, flyer, hang tag, mass mailing coupons or coupon inserts, web pages, e-mails and e-mail alerts, tweets, or other document or transmission relating to the sale, marketing or promotion of any product distributed by any method or media, including but not limited to television, radio, film, video, electronic storage device, print, magazine, newspaper, poster, billboard, window display, in-store or point of sale, product packaging, product inserts, product literature, direct mailing, telemarketing, facsimile, door-to-door soliciting, or internet, and includes all versions of such advertisements.

B.  "Bissell" means Bissell Homecare, Inc., and all successors, predecessors, parent companies, subsidiaries, joint ventures, divisions, and affiliates of the above-mentioned entity, and their officers, directors, employees, representatives, and agents.

C.  "Bissell Litigation" means the litigation captioned *Bissell Homecare, Inc. v. Dyson, Inc., et al.*, 1:08-cv-00724-RJJ (W.D. Mich.).

7

D. "Bissell Vacuums" means "any or all of the following Bissell vacuum cleaners marketed in the United States: (a) the Clean View Helix (Model Series #82H1) (herein "CleanView Helix"); (b) the Lift-Off MultiCyclonic Pet (Model Series #89Q9) (herein "Lift-Off MultiCyclonic Pet"); (c) the Pet Hair Eraser (Model Series #3920) (herein "Pet Hair Eraser Upright"); (d) the Momentum (Model Series #82G71) (herein "Momentum"); (e) the Healthy Home (Model Series #16N5) (herein "Healthy Home"); (f) the Rewind SmartClean (Model Series #58F8, 18M9-P) (herein "Rewind SmartClean"); (g) the PurePro Multi Cyclonic (Model Series #59G9) (herein "PurePro"); (h) the Pet Hair Eraser Canister (Model Series #66T6) (herein "Pet Hair Eraser Canister"); (i) the DigiPro Canister (Model Series #6900) (herein "DigiPro"); (j) the Pet Hair Eraser Corded Hand Vacuum (Model Series #33A1-B) (herein "Pet Hair Eraser Handheld"); and (k) the Clean View Deluxe Corded Hand Vacuum (Model Series #47R5/47R5-1) ("Clean View Deluxe Handheld").

E. "Communication" means any exchange, transmission, or receipt (whether as speaker or listener, as sender or addressee, as person calling or called or otherwise) of information, whether the exchange, the transmission or the receipt is oral, written, electronic or otherwise and includes, without limitation, any meeting, conversation, telephone call, letter, telegram, exchange, transmission or receipt of any document of any kind whatsoever. "Complaint" means and refers to the Complaint that Dyson filed against Bissell in the above-captioned matter on December 22, 2010.

F. "Date" means the exact day, month, and year or the best approximation thereof.

G. "Documents" means all documents properly subject to production under the Federal Rules of Civil Procedure, all writings, correspondence, books, e-mails, memoranda, invoices, contracts, purchase orders, receipts, pamphlets, publications, studies, catalogs,

8

periodicals, labels, packaging, displays, photographs, slides, videotapes, films, artwork, drawings, sketches, illustrative materials, circulars, price lists, advertisements, layouts, tear sheets, magnetic recording tapes, computer records or data, microfilms, and other storage means by which information is retained in retrievable form, and all other materials whether printed, typewritten, handwritten, recorded or reproduced by any mechanical or electronic process, including but not limited to information stored on a computer hard drive or any other electronic storage device.

  H. "Dyson" means Dyson, Inc., and their officers, directors, employees, representatives, and agents.

  I. "Identify" means:

   (1) When used with respect to an individual, state his/her full name, his/her present or last known address, his/her telephone number, his/her present or last known position and business affiliation, and his/her position and business affiliation at the time referenced in the interrogatory or request;

   (2) When used with respect to a corporation or other business or commercial entity, to state its full name, its current or last known address(es) and telephone number(s), and the last known address and telephone number of its principal officers, directors, managers and/or members;

   (3) When used with respect to a document, to state the date of the document's preparation, the author, the specific type of document (*e.g.*, letter, memorandum, telex, diary, tape recording, etc.), the general subject matter, the recipients and the document's present or last known location and custodian;

(4) When used with respect to any type of communication, action or activity, to state the dates thereof, the persons who participated and the substance and nature of said communications, action or activity, and whether the communications were oral; additionally, to state the place and the approximate time that the communication, action, or activity, took place and the identity of all persons in whose presence they occurred. "Person" or "persons" refer to any and all individuals and entities, including, without limitation, individuals, representative persons, associates, companies, corporations, partnerships, limited partnerships, limited liability companies, joint ventures, trusts, estates, public agencies, departments, divisions, bureaus and boards.

J. "Lee Agreement" means the letter dated December 27, 2006, regarding "Engagement of Ken Lee" from Christopher A. Cole of Manatt, Phelps & Phillip, LLC to William J. Brennan of BISSELL, Inc., and BISSELL Homecare, Inc., and signed by Christopher A. Cole, Isaiah Halivni and William J. Brennan, a copy of which is attached hereto as Exhibit A.

K. "Maytag Litigation" means a the litigation captioned *Dyson Technology Ltd. et al. v. Maytag Corp., et al.,* 1:05-cv-00434-GMS (D. Del.).

L. "Person" or "persons" refer to any and all individuals and entities, including, without limitation, individuals, representative persons, associates, companies, corporations, partnerships, limited partnerships, limited liability companies, joint ventures, trusts, estates, public agencies, departments, divisions, bureaus and boards.

M. "Relate to" (or a form thereof) means referencing, constituting, reflecting, supporting, contradicting, referring to, describing, recording, noting, embodying, containing, mentioning, studying, analyzing, discussing, evaluating, relevant to or regarding.

N. "2006 Agreement" means the agreement dated December 27, 2006, between Dyson, Inc., Dyson Technology Ltd., Bissell, Inc., and Bissell Homecare, Inc., and signed on December 27, 2006, by Isaiah Halivni and on December 28, 2006, by William J. Brennan., a copy of which is attached hereto as Exhibit B.

O. The conjunctions "and," "or" and "and/or" shall in each instance be construed to encompass the largest possible universe.

P. The masculine includes the feminine and vice versa. The singular includes the plural and vice versa.

Q. For all interrogatories that do not specify otherwise, the responses must pertain to the time from January 1, 2002, to the present.

## INSTRUCTIONS

The following instructions apply to Dyson's Interrogatories:

A. Unless otherwise indicated, the time period applicable to these discovery requests is 2002 through present.

B. If any of these Interrogatories cannot be answered in full, Bissell is to answer to the fullest extent possible specifying the reasons for Bissell's inability to answer the remainder, and stating what information, knowledge, or belief Bissell has concerning the unanswered portion. If exact dates, amounts, or other figures or facts are not known, but Bissell has information sufficient to make an approximate or estimated answer, make such answer and indicate it is an approximate or estimate because more precise information is not known to Bissell.

C. These Interrogatories are continuing in nature. Pursuant to Federal Rule of Civil Procedure 26(e), Bissell is under a duty to supplement, correct, or amend their response to any of

these Interrogatories if Bissell learns that any response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to Dyson during the discovery process or in writing.

D.      Pursuant to Federal Rule of Civil Procedure 26(b)(5) if Bissell withholds information otherwise discoverable under the Federal Rules of Civil Procedure by claiming that it is a privileged communication, attorney work product, or otherwise protected from disclosure, Bissell must make the claim expressly and describe the nature of the communications or information not disclosed in a manner that, without revealing information itself privileged or protected, will enable Dyson to assess the applicability of the privilege or protection and the Court to determine the legal sufficiency of the claim.

E.      If you contend that any Interrogatory is unclear, please contact the undersigned counsel and, if possible, the Interrogatory may be clarified in a reply letter. Any such reply letter may be treated as a modification of the Interrogatory.

DATED: March 22, 2011

Respectfully submitted,

KIRKLAND & ELLIS LLP

By: */s/ David K. Callahan, P.C.*

David K. Callahan (IL Bar No. 6206671)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Plaintiff, Dyson, Inc.*

12

## CERTIFICATE OF SERVICE

I, David K. Callahan, hereby certify that a copy of the foregoing **PLAINTIFF DYSON, INC.'S FIRST SET OF INTERROGATORIES** was served via hand delivery with a courtesy copy via electronic mail on March 22, 2011 to the following:

> David C. Hillard
> Uli Widmaier
> Ashly A. Iacullo
> PATTISHALL, McAULIFFE, NEWBURY,
> HILLARD & GERALDSON LLP
> 311 South Wacker Drive
> Suite 5000
> Chicago, Illinois 60606

*/s/ David K. Callahan, P.C.*